# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | CASE NO. 3:15-CR-00166-001 |
| vs. | : | JUDGE CARR |
| PABLO DURAN RAMIREZ, | : | |
| Defendant. | : | |

## SENTENCING MEMORANDUM OF PABLO DURAN RAMIREZ

Defendant Pablo Duran Ramirez, through undersigned counsel, respectfully submits the following Sentencing Memorandum for the Court's consideration pursuant to 18 U.S.C. § 3553.

>Respectfully submitted,
>**Taft Stettinius & Hollister LLP**
>
>**/s/David H. Thomas**
>DAVID H. THOMAS
>Ohio Supreme Court No. 0071492
>dthomas@taftlaw.com
>
>**/s/ Kathryn S. Wallrabenstein**
>KATHRYN S. WALLRABENSTEIN
>Ohio Supreme Court No. 0092172
>65 East State Street, Suite 1000
>Columbus, Ohio 43215
>P: (614) 334-6199
>F: (614) 221-2007
>kwallrabenstein@taftlaw.com
>
>Counsel for Defendant

**MEMORANDUM**

**FACTUAL AND PROCEDURAL BACKGROUND:**

Pablo Duran Ramirez (hereinafter "Mr. Duran") comes before the Court at fifty years of age following his guilty plea to one count of encouraging illegal entry pursuant to 8 U.S.C. § 1324(a)(1)(A)(iv) and (a)(1)(B)(i). He has been in custody since December 24, 2017. Pursuant to a plea agreement, the parties have recommended that the Court consider a sentencing guideline range of thirty to thirty-seven months imprisonment. The Presentence Investigation Report (PSI) calculates a sentencing guideline range of forty-one to fifty-one months. There is one outstanding objection to the calculations in the PSI.

Until his involvement in the instant offense, Pablo Duran's life was an unqualified success story. He was born as one of nine children to a farmer and a homemaker in the Zacatecas region of Mexico, where he was raised in a small home with cement walls and dirt floors. The family was poor and struggled for basic necessities such as food and clothing. In addition, Mr. Duran's father was an alcoholic who left the family when Mr. Duran was a teenager. However, at the age of sixteen Mr. Duran moved to the United States with his family. He went to work in agriculture, started a family of his own, and became a U.S. citizen in 2012. Mr. Duran is the father of five children and is currently married to Emma Calles. She and his two youngest children live in Hampton, Iowa, where she works as a nurse. With the exception of a 1991 misdemeanor conviction in Maine (which is not scoreable under the Guidelines) Mr. Duran has no criminal history of any kind.

**REASONS IN SUPPORT OF A DEVIATION FROM RECOMMENDED SENTENCE:**

Mr. Duran respectfully submits that a thirty month term of imprisonment will satisfy the purposes of sentencing as set forth in 18 U.S.C. § 3553(a), and that such a sentence would be consistent with the factors set forth in section 3553 and, in consideration of the now-advisory Sentencing Guidelines, would be reasonable based upon the particular facts and circumstances in this case.

***The nature and circumstances of the offense and the history and characteristics of Pablo Duran warrant a thirty month term of imprisonment.***
***18 U.S.C. § 3553(a)(1)***

A reasonable sentence considers the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to § 3553(a)(1). It is respectfully submitted that both the nature and circumstances of the offense and the history and characteristics of Mr. Duran justify a thirty month sentence.

First, the nature and circumstances of the offense warrant a thirty month sentence. Mr. Duran recognizes that this is an extremely serious case, and there is no way to minimize the harm done to the children and others involved. As the owner of Haba, Mr. Duran became aware that minors had been brought into the country illegally by contractors working for Haba. He regrets his actions in this case and accepts responsibility for them. He was not aware, however, that the workers were subject to coercion and threats. Furthermore, while Haba received $6 million in gross receipts from its contracts with Trillium, Mr. Duran's share was limited to $1,630 per week in salary between April 2012 and December of 2014, which equates to $84,760 per year. The overwhelming majority of the $6 million was paid back out to the labor contractors and for other overhead at Haba.

3

Second, Mr. Duran's unique history and characteristics also support the imposition of a thirty month sentence.  As discussed above and in the PSI, Mr. Duran overcame an impoverished background and lack of education to raise a family, gain U.S. citizenship, and build a life in the United States.  He lived a lawful and productive life until his involvement with Haba and Trillium. Furthermore, he has made the best of his situation in confinement by participating in numerous programs while incarcerated.  This extensive program participation demonstrates that Mr. Duran is committed to conducting himself in a law-abiding way and that an extended prison sentence is not necessary to carry out the purposes and principles of federal sentencing.  Copies of documentation from Mr. Duran's program participation are attached for the Court's convenience as Exhibit A.

### *Pablo Duran understands the seriousness of his offense.*
### **18 U.S.C. § 3553(a)(2)(A) and § 3553(a)(2)(B).**

The Court's sentence should reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense according to § 3553(a)(2)(A).  This sentence should also adequately deter criminal conduct under § 3553(a)(2)(B).  In this case, a thirty month sentence will accomplish those objectives.  Mr. Duran has accepted responsibility for his actions and is prepared to face the consequences for his involvement in this case.  As will be discussed below, based on his age and lack of criminal history, he is extremely unlikely to reoffend.  Therefore, a thirty month sentence is sufficient but not greater than necessary to reflect the seriousness of the case, promote respect for the law, provide just punishment, and deter criminal conduct by Mr. Duran and others.

### *A thirty month sentence will protect the public, as Mr. Duran is less likely to reoffend.*
### 18 U.S.C. § 3553(a)(2)(C)

A reasonable sentence should protect the public from further crimes of the defendant pursuant to § 3553(a)(2)(C). Mr. Duran presents a lesser risk of committing crimes in the future. His history, character, and condition are consistent with a person who presents a low risk for recidivism. Mr. Duran has a criminal history score of zero.

In addition, Mr. Duran is less likely to reoffend because he has readily and clearly accepted responsibility for his actions and shown remorse through his conduct in this case. As this Court is aware, a guilty plea is an important step in the rehabilitative process. Mr. Duran's cooperation with the presentence investigation and acceptance of responsibility provide additional evidence of his remorse and commitment to living a law-abiding life in the future. Therefore, an extended punishment is not necessary to deter Mr. Duran from criminal conduct or to protect the public.

The United States Sentencing Commission overview of recidivism among federal offenders published in March of 2016 supports a finding that Mr. Duran is less likely to reoffend due to his older age. Mr. Duran is fifty years old. "Studies have repeatedly shown that older offenders at sentencing are at lower risk for reoffending, and the Commission's research confirms these findings." United States Sentencing Commission, *Recidivism Among Federal Offenders: A Comprehensive Overview*, 23[1]. The rearrest rate for individuals who are fifty-one to sixty years old at the time of sentencing is 21.7%. *Id.* Further, Mr. Duran's criminal history computation of zero supports a finding that he is unlikely to reoffend. In the 2016 report, the commission noted that "[f]ully consistent with its previous recidivism studies, the Commission's

---

[1] Available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.

present study found that recidivism rates are most closely correlated with total criminal history points. For example, 30.2 percent of offenders with zero total criminal history points were rearrested within eight years, compared to 81.5 percent of offenders with more than 10 total criminal history points." *Id*, at 18.

It is also noteworthy that this is Mr. Duran's first offense after living a law-abiding life for a significant number of years. The United States Sentencing Commission has found that offenders with zero criminal history points, like Mr. Duran, have "lower rates of recidivism than offenders with one or more criminal history points." UNITED STATES SENTENCING COMMISSION, RECIDIVISM AND THE "FIRST OFFENDER" 17 (May 2004)[2]. The Commission identified four characteristics associated with "less culpable criminal conduct: no use of violence or weapons; no bodily injury of a victim; a minor role or minimal participation in the instant offense, and acceptance of responsibility." *Id.*, at 9-10, citing to the criteria under § 5C1.2. It is respectfully submitted that Mr. Duran was substantially less culpable than some of the other participants, and that, based on the foregoing, criteria, a thirty month sentence is warranted.

***A thirty month sentence will provide Mr. Duran with needed educational
or vocational training, medical care, or other correctional treatment
in the most effective manner.***
**18 U.S.C. § 3553(a)(2)(D)**

The Court's sentence should provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner according to § 3553(a)(2)(D). As discussed in the PSI, Mr. Duran does not have a high school diploma and is a recovering alcoholic. He would benefit substantially from participation in programming to address both issues. Accordingly, it is respectfully requested that the Court recommend

---

[2] Available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf.

participation in both educational programming and the Bureau of Prisons' Residential Drug Abuse Program. A thirty month sentence would be adequate to provide Mr. Duran with time to complete his GED and participate in the RDAP program.

### *A thirty month sentence is available and would be sufficient for this offense.*
### 18 U.S.C. § 3553(a)(3) and § 3553(a)(4)(A)

The Court's sentence should consider the kinds of sentences available and the sentencing range established for the applicable category of offense committed by the applicable category of defendant set forth in the guidelines under § 3553(a)(3) and § 3553(a)(4). In arriving at a sentence that is "sufficient, but not greater than necessary" to satisfy Congress' sentencing mandate, this Court is also asked to consider the kinds of sentences and the sentencing range called for by the advisory Guidelines and the applicable statutes. There is no mandatory minimum sentence in this case. The sentencing range called for by the PSI is forty-one to fifty-one months. The plea agreement suggests a range of thirty to thirty-seven months. Mr. Duran respectfully submits that a thirty month term of imprisonment is available and, for the reasons set forth in the preceding sections, would be sufficient in this matter.

### *A thirty month sentence would not be inconsistent with pertinent policy statements issued by the Sentencing Commission.*
### 18 U.S.C. § 3553(a)(5)

It is respectfully submitted that the Sentencing Commission has not issued a policy statement with respect to section 2L1.1 or any other applicable Guideline section that justifies a sentence outside the range set forth in the plea agreement.

### *A thirty month sentence would not be disparate compared to other sentences.*
### 18 U.S.C. § 3553(a)(6)

The Court's sentence should also avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct according to § 3553(a)(6). According to the United States Sentencing Commission, in fiscal year 2017, 41.5% of alien smuggling offenders received a sentence below the guideline range. Of those offenders, 87.2% of the downward variances were for participation in fast-track Early Disposition Programs or other reasons. Only 12.7% of the downward variances were for providing substantial assistance to the government. The average reduction sentences was 40.8% for fast-track cases and 46.3% in others (not including substantial assistance reductions).[3]

Based on the foregoing, a thirty month sentence would not be disparate compared to other alien smuggling sentences nationwide. Pursuant to section 5K3.1 of the Sentencing Guidelines, Mr. Duran would have been eligible for up to a four-point reduction if a fast-track program had been available in this case. Such a reduction was not available to Mr. Duran because (1) it is not offered in the Northern District of Ohio and (2) he is a U.S. citizen. Ironically, if Mr. Duran did not have legal status in this country and if he committed his offense in a border district, he would have been eligible for this four point reduction. In order to avoid an unfair and unwarranted disparity from the sentences imposed on those offenders for the same conduct, Mr. Duran requests that the Court impose a thirty month sentence. It is respectfully submitted that this term of imprisonment would fulfill the purposes of sentencing and would not be disparate to sentences for similar offenders in other parts of the country.

---

[3] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Alien_Smuggling_FY17.pdf.

*Mr. Duran requests that the Court make recommendations to the Bureau of Prisons.*

Mr. Duran respectfully requests that the Court make two recommendations to the Bureau of Prisons. First, he requests a recommendation to the BOP's Residential Drug Abuse Program. Paragraphs seventy-one and seventy-two of the PSI document Mr. Duran's history of alcohol abuse, which overlaps the offense conduct in this case. Accordingly, an RDAP recommendation is warranted in this case. Second, Mr. Duran requests that the Court recommend a designation to one of the federal correctional institutions in Greenville, Illinois, or Oxford, Wisconsin, or the federal prisons camps in Yankton, South Dakota.

**CONCLUSION:**

This Court is respectfully requested to consider all of the foregoing information when formulating an appropriate disposition in Mr. Duran's case. For the foregoing reasons, Mr. Duran respectfully submits that a sentence of thirty months imprisonment is warranted pursuant to 18 U.S.C. § 3553.

Respectfully submitted,
**Taft Stettinius & Hollister LLP**

**/s/David H. Thomas**
DAVID H. THOMAS
Ohio Supreme Court No. 0071492
dthomas@taftlaw.com

**/s/ Kathryn S. Wallrabenstein**
KATHRYN S. WALLRABENSTEIN
Ohio Supreme Court No. 0092172
65 East State Street, Suite 1000
Columbus, Ohio 43215
P: (614) 334-6199
F: (614) 221-2007
kwallrabenstein@taftlaw.com

Counsel for Defendant

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was sent to Assistant U.S. Attorneys Chelsea Rice, Bridget Brennan, and Dana Mulhauser, on December 28, 2018, via the Court's electronic filing system.

**/s/David H. Thomas**
DAVID H. THOMAS